THE MISSOURI, KANSAS & TEXAS RAILWAY COMPANY
v. W. E. HAYES.

No. 13,862. (88 Pac. 64.)

RAILROADS—*Live Stock Carried Beyond Destination.* A railway company held liable for damages resulting from its negligently carrying cattle to a different destination than that specified by the shipper.

Error from Miami district court; WINFIELD H. SHELDON, judge. Opinion filed December 8, 1906. Affirmed.

*T. N. Sedgwick, W. W. Brown, John Madden,* and *J. E. Maxwell,* for plaintiff in error.

*Frank M. Sheridan,* for defendant in error.

*Per Curiam:* This action was commenced in the district court of Miami county to recover damages on account of injuries sustained by a car-load of fat cattle, shipped over the railroad of plaintiff in error from Kansas City and negligently carried beyond the point of destination. The controversy will be understood by a consideration of the following facts:

In 1901 the defendant in error, W. E. Hayes, resided near Norman, Kan., which is a small station on the line of the Missouri, Kansas & Texas Railway Company, a short distance south of Paola. Norman has a switch and stock-pens, but neither agent nor station-building. Persons shipping from this place transact the business relating thereto with the company through its agent at Paola. Hayes, wishing to ship two carloads of cattle from Norman to Kansas City, made arrangements to do so with the agent of the plaintiff in error at Paola. In pursuance of such transaction the company placed the necessary cars on the switch at Norman, where they were loaded by Hayes. During the night of July 10, 1901, a passing freight-train took the loaded cars to Paola, where the business relating to the shipment was completed. When the train stopped at Paola Hayes requested the agent to make proper shipping-bills for the cattle while he got something to eat at a lunch-counter. The agent inquired of Hayes the name of the consignee and the number of cattle to be shipped. He then proceeded to prepare the necessary papers. By mistake Sinkey was written in the shipping-bill as the point from which the cattle were shipped. Sinkey is a small station about seven miles south of Norman, at which there is no agent or building. When Hayes returned from taking lunch the train was ready to start, and he hurriedly received the papers without reading them.

There is a sharp conflict in the evidence as to whether the word "Sinkey" was erroneously inserted in the shipping-bill on account of the negligence of Hayes or the agent, but as the jury found in favor of the plaintiff we accept the conclusion that it was the result of the negligence of the agent.

The cattle were consigned to Greer, Mills & Co., a commission firm in Kansas City. When Hayes unloaded the cattle he found the market such that he determined to ship one car-load of fine fat cattle back home. Being in a hurry he sent one of the salesmen at the stock-yards to the Missouri, Kansas & Texas agent to order the reshipment. This salesman informed the agent that Hayes wanted the cattle then in a certain pen shipped back to the place whence they came. Afterward, and before the cattle were loaded, Hayes went to the agent to get his shipping contract signed, so it could be used as a pass on his return trip home. When the agent examined the contract the following conversation took place between them, as shown by the testimony of Hayes:

"Ques. Did you have any talk with him as to where the cattle were going? Ans. Yes, sir."

"Q. Did you tell him . . . anything about Norman? A. I walked in and throwed down my contract to have it signed up so I could ride home on it.

"Q. That is the contract—pass? A. Yes, sir.

"Q. That you used on your shipment going up? A. Yes.

"Q. Go ahead. A. That was my business—to get it signed up; and I throwed it down for him to sign it, and he says: 'Where did you get on at?' And I says: 'I got on at Norman.' And he says: 'Your contract says Sinkey, and I told him I did n't. He wanted to know where this Sinkey was and I told him I did n't know of any place called Sinkey. That was the first time I ever heard the name Sinkey and I do n't now remember just the conversation exactly, but he wanted to know where it was and I told him the first station south of Paola; and finally he says: 'Well, you want these cattle billed back to the place they were loaded at?' And I says: 'That is all I want.'"

"Q. And the cattle were loaded at Norman, you say? A. Yes, sir; the cattle were loaded at Norman.

"Q. No question about that? A. No; I live right by there and I know."

"Q. Did you make any explanation to this Mr. Maxwell about the station of Norman? A. Yes; he wanted to know where I got on at and I told him I got on at Norman, and he says: 'Your billing says Sinkey.' I told him that I was satisfied it was n't Sinkey; that it was a mistake if it was, because I knew it was Norman. He says: 'Do you live close by?' I told him I did. He wanted to know then how far it was from Paola and I told him. He wanted to know where Sinkey was and I told him I did n't know of any place that they called Sinkey at that time.

"Q. How far did you tell him that this place Norman was from Paola? A. I told him about two miles south of Paola on the hill—the first station."

"Q. I will ask you what he said, if anything, to you about being a new man? A. After he asked me those questions he says: 'I am a new man and I am not acquainted with all those little stations.'"

Notwithstanding this conversation with the owner of the cattle, to whom the shipment was consigned, the agent sent the cattle to Sinkey. Whether this mistake was due to the negligence of Hayes or the agent is a question of fact which has been answered by the jury upon the evidence submitted, and we are concluded thereby. We must assume, therefore, that it was negligence in the agent to make such shipment after the instructions received from the owner and shipper in person, even though it appeared from the way-bill in his possession that the cattle had been shipped from Sinkey. The plaintiff in error, having been negligent in these respects, is liable for the damages sustained thereby.

No question is made as to the amount of recovery. The case seems to have been tried upon the theory that the contract of shipment was in writing, and that damages had been waived by failure to give certain notices which are usually required by the ordinary shipper's contract, but it is clear that the only contract upon

the subject was the oral direction given to the agent at Kansas City by the salesman acting for Hayes, and the conversation of Hayes himself with the company's agent, as hereinbefore stated. Other assignments of error depend upon questions which got into the case because of this erroneous theory, and therefore need not be considered.

We are unable to find any sufficient reason for disturbing the judgment of the district court, and it is affirmed.